IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **Erik Salaiz**, on behalf of himself and all others similarly situated, | § § § | |
| Plaintiff | § § | |
| *versus* | § § | |
| **ABSOLUTE HEALTH AGENTS LLC,** a Florida Limited Liability Company | § § § § | **Civil Action No. 3:24-cv-392** |
| Defendant, | § § | |
| And | § § | **DEMAND FOR JURY TRIAL** |
| **DAVE GREEN** | § § | |
| Defendant, | § § | |
| And | § § | |
| **Jane/John Doe** | § § | |
| Defendant. | § | |

CLASS ACTION COMPLAINT

**INTRODUCTION**

Plaintiff ERIK SALAIZ, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendants Absolute Health Agents LLC and Dave Green to stop their illegal practice of placing, through its telemarketers, unsolicited telephone calls in violation of the Telephone Consumer Protection Act ("TCPA"). Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigations conducted by his attorney.

**PARTIES**

1. Plaintiff Erik Salaiz (hereinafter "Mr. Salaiz") is an individual residing in or near El Paso, County Texas and was present for all causes of action complained of herein within El Paso, Texas.

2. Mr. Salaiz may be served any relevant papers via email to his counsel Omar Darwich at omar@darwichlegal.com

3. Defendant Absolute Health Agents LLC (hereinafter "Absolute") is a limited liability company organized and existing under the laws of Florida and can be served via its registered agent Ken Senclair at 1501 Corporate Drive, Boynton Beach, Florida 33446.

4. Defendant Dave Green (hereinafter "Green") was the chief executive officer of Defendant Absolute at the time of the alleged calls were made in this case herein, residing in the State of Florida. Defendant Green can be served at 8142 Banpo Bridge Way, Delray Beach, Florida 33446.

5. Upon information and belief, unnamed party Jane/John Doe is an unidentified telemarketing company making solicitation phone calls at the instruction, direction, and oversight of Defendants Absolute and Green.

6.   Defendant Absolute and Green are hereinafter referred to collectively as "Defendants".

## JURISDICTION AND VENUE

7.   This action is brought by Mr. Salaiz pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

8.   This Court has jurisdiction over the subject matter of the claims under the TCPA pursuant to 47 U.S.C. § 227(g)(2). This Court further has jurisdiction over the subject matter of the claims under the TCPA pursuant to 27 U.S.C. § 1331, and has pendant jurisdiction over the subject matter of the claims under the Texas Business and Commerce Code pursuant to 28 U.S.C. § 1367.

9.   This Court has general personal jurisdiction over the Defendants as they, upon information and belief, authorized telemarketers to place calls on their behalf to Texas residents, derive or derived revenue from Texas residents, and sell goods and services to Texas residents and have otherwise availed themselves to the State of Texas.

10.  Venue of this suit lies in the Western District of Texas, El Paso Division pursuant to 47 U.S.C. § 227(g)(4) because violations of the TCPA occurred within the Western District of Texas, as more specifically alleged below. Venue further lies in the Western District of Texas, El Paso Division pursuant to 28 U.S.C. § 1391(b) because a substantial part of events giving rise to the claim alleged herein occurred within the Western District of Texas,

## STATEMENT OF FACTS

11.  Mr. Salaiz realleges paragraphs one through ten and incorporates them herein as if set forth here in full.

12. Mr. Salaiz's personal cell phone (XXX) XXX-6688 has been registered on the National Do-Not-Call Registry since March 27, 2024.

13. Mr. Salaiz has never instructed the National Do-Not-Call Registry administrator to remove him from the National Do-Not-Call Registry. Mr. Salaiz has been on the National Do-Not-Call Registry at all times relevant to this Complaint.

14. Mr. Salaiz's telephone number 6688 is a residential number.

15. Mr. Salaiz's telephone number 6688 is used for personal purposes and is not associated with business.

16. Upon information and belief, Defendant Absolute is and/or was owned and controlled by Defendant Green during the period Plaintiff received the alleged calls.

17. Upon information and belief, Defendant Absolute operates as a health insurance broker and offers health insurance to consumers through major insurance carriers.

18. Upon information and belief, as part of their marketing, Defendant Green contracted with Jane/John Doe to make solicitation calls to thousands of consumers' residential phone numbers on behalf of Defendant Absolute.

19. Jane/John Doe an unknown entity is believed to be located offshore and out of the jurisdiction of the United States and the State of Texas.

20. Upon information and belief, Defendant Green authorizes the payments to Jane/John Doe.

21. Upon information and belief, Defendant Green pays Jane/John Doe out of Defendant Absolute's bank accounts that they own and control.

22. Defendant Green approves of the prerecorded voice message Jane/John Doe uses as part of Defendant Absolute's marketing campaign.

23. Each and every telemarketing call Mr. Salaiz received from Jane/John Doe calling on behalf of Defendants Absolute and Green all started with the same artificial or prerecorded voice message.

24. The artificial or prerecorded voice message does not identify either Defendants Absolute or Green.

25. Mr. Salaiz has never had any relationship with Defendants Absolute or Green or has ever been a customer of Defendants' and never gave them his prior express written consent to receive the alleged calls in this case.

26. Mr. Salaiz received at least ten (10) telemarketing calls that started with the same exact artificial or prerecorded voice message to his personal cell phone 6688 within a month period from Jane/John Doe calling on behalf of Defendants Absolute and Green ("the calls").

27. The calls were made to Plaintiff for the purpose of encouraging the purchase of a health insurance plan on behalf of Defendants Absolute and Green.

28. Jane/John Doe spoofed the caller ID on each and every alleged call in order to disguise their identity.

29. Mr. Salaiz believes that additional telemarketing calls from Jane/John Doe soliciting final expense insurance were made on behalf of Defendants Absolute and Green that are unknown to Mr. Salaiz at this time but will be revealed during discovery.

30. Calls #1-9 – Mr. Salaiz answered each call and heard the same artificial or prerecorded voice message soliciting health insurance:

"Hello, my name is Grace and I'm calling from insurance solutions how are you doing today? That's great. I'm calling to let you know that you may qualify for an affordable health insurance plan that will cover all of your copays and deductibles at a very low

cost. So would you like to know If you qualify? That's great. So now I'm going to transfer this call to my supervisor, so stay with me on the line.

31. The calls were clearly pre-recorded because (a) they were sent with automated technology used to mask Caller IDs (b) they used a singular monotone voice (c) it was a generic message not personalized for the recipient (d) there was a pause prior to the recorded message being played.

32. Calls #1-9 – Mr. Salaiz did not request information regarding health insurance and disconnected the call each time.

33. Upon information and belief, Jane/ John Doe uses an unregistered fictitious name "insurance solutions" in order to hide Defendants' identities and duck liability for illegal telemarketing calls.

34. Call #10 – Mr. Salaiz answered and heard the same artificial or prerecorded voice message in calls 1-9.

35. Calls # 1-10 - The artificial or prerecorded voice message played does not identify either Defendants Absolute or Green.

36. Mr. Salaiz was annoyed and frustrated from continuing to receive the same artificial or prerecorded voice message and engaged in the call as it was the only way to identify who was behind the calls.

37. Mr. Salaiz was connected to a male telemarketer with a foreign accent who was soliciting health insurance.

38. The telemarketer did not identify himself or who he was calling on behalf of.

39. The telemarketer asked Mr. Salaiz qualifying questions and then stated to Mr. Salaiz, "Right now I will just connect you with my best licensed agent in your local area who will assist you further okay?"

40. Upon information and belief, Defendant Green provides Jane/John with specific qualifications a consumer must meet for a health insurance plan prior to transferring the call to Defendant Absolute.

41. Without any interruption or disconnection of the call, the telemarketer live transferred Plaintiff to an agent with Defendant Absolute named Raquilla.

42. Raquilla asked Mr. Salaiz additional qualifying questions regarding a health insurance plan, collected Mr. Salaiz's personal information and solicited Mr. Salaiz for a health insurance plan with United Healthcare on behalf of Defendants Absolute and Green.

43. Raquilla sent Mr. Salaiz a consent form via email for Mr. Salaiz to sign regarding the health insurance plan. *See Exhibit A*.

44. The table below displays the calls made to Mr. Salaiz by Jane/John Doe on behalf of Defendants

| Number | Date | Time | Caller ID | Notes |
|--------|------|------|-----------|-------|
| 1. | 7/15/2024 | 1:57 PM | 915-755-5352 | Prerecorded voice message. Disconnected the call. |
| 2. | 7/16/2024 | 2:06 PM | 915-759-8587 | Same prerecorded voice message as call one. Disconnected the call. |
| 3. | 7/18/2024 | 3:32 PM | 915-757-2777 | Same prerecorded voice message as call one. Disconnected the call. |
| 4. | 7/22/2024 | 3:42 PM | 915-757-2777 | Same prerecorded voice message as call one. Disconnected the call. |
| 5. | 7/23/2024 | 9:17 AM | 915-755-5047 | Same prerecorded voice message as call one. Disconnected the call. |

| 6. | 7/23/2024 | 4:46 PM | 915-757-0777 | Same prerecorded voice message as call one. Disconnected the call. |
|----|-----------|---------|--------------|------------------------------------------------------------------|
| 7. | 7/24/2024 | 5:22 PM | 915-759-8832 | Same prerecorded voice message as call one. Disconnected the call. |
| 8. | 7/25/2024 | 2:55 PM | 915-757-2020 | Same prerecorded voice message as call one. Disconnected the call. |
| 9. | 7/25/2024 | 5:13 PM | 915-757-8341 | Same prerecorded voice message as call one. Disconnected the call. |
| 10. | 7/26/2024 | 9:54 AM | 915-759-0189 | Same prerecorded voice message as call one. Telemarketer live transferred me to Absolute Health. |

45. Upon information and belief, Defendants employ outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

46. Upon information and belief, either Defendants Absolute or Green do not have a solicitation registration certificate on file with the Texas Secretary of State as required to make telephone solicitations to Texas residents either directly or through Jane/John Doe. Mr.Salaiz is a Texas resident. The https://direct.sos.state.tx.us/telephone/telephonesearch.asp site ("Texas Registration Database") does not contain any of the either Defendants' registration.

47. Upon information and belief, Defendants Absolute or Green do not qualify for an exemption under § 302.053.

48. Mr. Salaiz never provided his prior express written consent to receive any of the calls.

49. The calls were nonconsensual encounters that were not made for emergency purposes.

50. Upon information and belief, the calls were placed while knowingly ignoring the national do-not-call registry.

51. Upon information and belief the calls were placed without training their telemarketers and/or agents on the use of an internal do-not-call policy.

## BASIS FOR LIABILITY

52. Mr. Salaiz realleges paragraphs one through fifty-one and incorporates them herein as if set forth here in full.

53. Even if Defendants Absolute or Green did not personally make the TCPA violating calls to Plaintiff, they are liable for the TCPA violations under the following theories of vicarious liability: Actual Authority, Apparent Authority, or Ratification.

## ACTUAL AUTHORITY

54. Mr. Salaiz realleges paragraphs one through fifty-three and incorporates them herein as if set forth here in full.

55. Defendant Absolute and/or Green authorized and hired Jane/John Doe to generate prospective customers through illegal telemarketing calls.

56. Accordingly, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." See In re Rules & Regulations Implementing the TCPA, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995) (emphasis added).

57. In their January 4, 2008, ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. Id. (specifically

recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

58. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is 4:23-cv-03055-JMG-MDN Doc # 1 Filed: 04/13/23 Page 7 of 11 - Page ID # 7 8 liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

59. Defendant Jane/John Doe solicited Mr. Salaiz on behalf of the Defendants. Accordingly, Jane/John Doe had Defendants Absolute and Green actual authority to solicit Mr. Salaiz through illegal telemarketing calls.

### APPARENT AUTHORITY

60. Mr. Salaiz realleges paragraphs one through fifty-nine and incorporates them herein as if set forth here in full.

61. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

[A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct. 28 CC Rcd at 6592 (¶ 46).

62. Defendants Absolute and Green authorized Jane/John Doe to generate prospective business for them through illegal telemarketing.

63.  Jane/John Doe called and transferred calls to Defendant Absolute who solicited Mr. Salaiz for a health insurance plan. The integration of their sales efforts was so seamless that it appeared to Mr. Salaiz that Defendants all appeared to be acting together as the same company.

64. Consumers, including Plaintiff and members of the Class, reasonably believed and relied on the fact that Jane/John Doe had received permission to sell, market, and solicit the products of Defendants Absolute and Green.

65. As a direct and proximate result of Jane/John Doe's illegal phone calls – which were made on behalf of and with the apparent authority of the other Defendants, Plaintiff and Class members suffered actual damages, including their time to answer the violating calls, depleted battery life, wasted time, invasion of their privacy and the nuisance of receiving the calls.

### RATIFICATION

66. Mr. Salaiz realleges paragraphs one through sixty-five and incorporates them herein as if set forth here in full.

67. Upon information and belief Defendants Absolute and Green knowingly and actively accepted business that originated through the illegal calls placed by Jane/John Doe.

68. By accepting these contacts and executing contracts with the robocall victims, Defendants "manifest[ed] assent or otherwise consent[ed] . . . to act" on behalf of Jane/John Doe, as described in the Restatement (Third) of Agency.

69. Jane/John Doe called Mr. Salaiz and solicited customers to transfer to Defendant Absolute.

70. Upon information and belief, Defendants Absolute and Green received new customers and the possibility of new business.

71. Upon information and belief, Defendants Absolute and Green ratified Jane/John Doe's TCPA violations by knowingly accepting the benefits of new customers and revenue despite the fact that the sale was generated through illegal calling.

72. Upon information and belief, Defendants Absolute or Green further ratified Jane/John Doe's TCPA violations by being aware of the violations, being willfully ignorant of the violations or by being aware that such knowledge was lacking.

73. As a direct and proximate result of Jane/John Doe's illegal phone calls, Mr. Salaiz and the Class members suffered actual damages, including their wasted time to answer the violating calls, the monies paid to receive the calls, the depleted phone minutes available to them, invasion of their privacy and the nuisance of receiving the calls.

### PERSONAL LIABILITY OF DEFENDANT GREEN

74. Mr. Salaiz realleges paragraphs one through seventy-three and incorporates them herein as if set forth here in full.

75. Upon information and belief Defendant Green refuses to take any action to stop or curtail the unlawful sales practices and illegal phone calls because these practices benefit Defendants Absolute and Green financially.

76. "If the officer directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, he may be personAbsolute liable.  See *United States v Pollution Serv. Of Oswego, Inc.*, 763 F.2d 133, 134-135 (2nd Cir.1985)

77. The "well-settled" tort rule provides that "when corporate officers directly participate in or authorized the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personAbsolute liable."  *General Motos Acceptance Corp. v.*

*Bates*, 954 F.2d 1081, 1085 (5th Cir. 1992). The Fifth Circuit has elaborated that "the thrust of the general [tort] rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the 'guiding spirit' behind the wrongful conduct….or the 'central figure' in the challenged corporate activity*.*" *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cirt. 1985) (Citing *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F. 2d 902, 907 (1st Cir.1980)) (Citing *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001)

78.  Upon information and belief, at all times material to the Complaint, acting alone or in concert with others, Defendant Green has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Defendant Absolute including the acts or practices set forth in this Complaint.

79.  Upon information and belief, Defendant Green is the principal director and operator of Defendant Absolute, controls the day-to-day operations of Defendant Absolute and directed their representatives, employees, agents, salespersons, and/or telemarketers to make TCPA violating phone calls to solicit final expense insurance on behalf of Defendant Absolute.

80.  Upon information and belief, Defendant Green is not merely a bystander and is the mastermind that schemed, planned, directed, initiated, and controlled the illegal and fraudulent behavior.

81.  Upon information and belief, Defendant Green is well aware his conduct violated the TCPA and Tex. DPTA and refused to alter his behavior. Defendant Green is the sole director of Defendant Absolute and the only person with the power to make the unlawful,

fraudulent, and unethical behavior stop.  Yet, Defendant Green has taken no steps to stop the behavior because this behavior benefits Defendants financially.

82.    Defendant Green should be held jointly and severally liable for both the TCPA violations and via the Tex. DTPA because he actually committed the conduct that violated the TCPA and Tex. DTPA, and/or he actively oversaw and directed this conduct.

83.    Defendant Green should be held liable because to do otherwise would simply allow him to dissolve Defendant Absolute and set up a new corporation and repeat his conduct thus frustrating the purposes of the TCPA and DTPA.

## CLASS ALLEGATIONS

84.    **Class Definition**: Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of Plaintiff and a class defined as follows:

> **TCPA Class**.  All persons in the United States who: (1) from the last 4 years to present (2) Defendant called (3) whose telephone numbers were registered on the Federal Do Not Call registry for more than 30 days at the time.

> **Texas Subclass**.  All persons in Texas who: (1) from the last 4 years to present (2) Defendant called (3) whose telephone numbers were registered on the Federal Do Not Call registry for more than 30 days at the time.

85.    The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

86. **Numerosity**: The exact number of the Class members is unknown and not available to Plaintiff, but individual joinder is impracticable. On information and belief, Defendants have called hundreds if not thousands of consumers who fall into the definition of the Class. Members of the Class can be identified through Defendants' records.

87. **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the Class members sustained damages arising out of Defendants' uniform wrongful conduct and unsolicited messages.

88. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff's claims are made in a representative capacity on behalf of the other members of the Class. Plaintiff has no interests antagonistic to the interests of the other members of the proposed Class and is subject to no unique defenses. Plaintiff has retained competent counsel to prosecute the case on behalf of Plaintiff and the proposed Class. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so.

89. **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinge on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

90. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

91. Whether the unsolicited calls were caused by the Defendants;

92. Whether the unsolicited calls promoted the Defendants' products or services;

93. Whether the Defendants checked the phone numbers to be called against the Federal Do Not Call registry;

94. Whether members of the Class are entitled to treble damages based on the knowingness and/or willfulness of Defendants' conduct.

95. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

### INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES AS A RESULT OF DEFENDANTS' ACTIONS

96. Mr. Salaiz realleges paragraphs one through ninety-five and incorporates them herein as if set forth here in full.

97.  The calls harmed Mr. Salaiz by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

98.  The calls harmed Mr. Salaiz by trespassing upon and interfering with his rights and interests in his cellular telephone.

99.  The calls harmed Mr. Salaiz by intruding upon his seclusion.

100.  Mr. Salaiz has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of his cell phone.

**First Cause of Action:**
**Violation of 47 U.S.C. § 227(b)**
**Artificial or Prerecorded Voice**
**(On behalf of Plaintiff and the TCPA Class)**
**(Against All Defendants)**

101.  Mr. Salaiz realleges paragraphs one through one hundred and incorporates them herein as if set forth here in full.

102.  Jane/John Doe placed telephone calls to Mr. Salaiz's and the Class members' cellular and/or residential telephones without having their prior express written consent to do so.

103.  The calls were made for the express purpose of soliciting customers for Defendant Absolute's goods and services.

104.  When Mr. Salaiz and the Class answered, the calls played an artificial or prerecorded voice message to their cellular and/or residential phones as proscribed by 47 U.S.C. § 227(b)(1)(A)(iii) and 47 U.S.C. § 227(b)(1)(B).

105.  As a result of its unlawful conduct, Defendants repeatedly invaded Mr. Salaiz's and the Class's personal privacy, causing them to suffer damages and, under 47 U.S.C. §

227(b)(3)(B), entitling them to recover $500 in civil fines for each violation and an injunction requiring Defendants to stop its illegal calling campaign.

106.  Defendants telemarketer and/or their agents made the violating calls "willfully" and/or "knowingly" under 47 U.S.C. § 227(b)(3)(C).

107.  If the court finds that Defendants willfully and/or knowingly violated this subsection, the court may increase the civil fine from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).


**<u>Second Cause of Action</u>:**
**Violation of 47 U.S.C. § 227(c)**
**Do Not Call Provision**
**(<u>On behalf of Plaintiff and the TCPA Class</u>)**
**(Against All Defendants)**

108.  Mr. Salaiz realleges paragraphs one through one hundred and seven and incorporates them herein as if set forth here in full.

109.  The telephone numbers of Mr. Salaiz and the Class are registered on the Do Not Call Registry.

110.  Defendants' telemarketer and/or its agents placed unsolicited phone calls to Mr. Salaiz's and the Class members' DNC registered telephones without having their prior written consent to do so.

111.  Defendants' actions agents constitute violations of 47 U.S.C. § 227(c) of the TCPA, by soliciting telephone numbers listed on the Federal Government's National Do Not Call Registry. 47 C.F.R. § 64.1200(c)(2).

112.  Defendants solicitating phone calls were made for the commercial purpose of selling final expense insurance to consumers.

113. As a result of its unlawful conduct, Defendants repeatedly invaded Mr. Salaiz's and the Class's personal privacy, causing them to suffer damages.

114. Mr. Salaiz is entitled to an award of at least $500 in damages for each such violation (47 U.S.C. § 227(c)(5)(B)) or $1,500 if the violation is knowing or willful. 47 U.S.C. § 227(c)(5).

115. Mr. Salaiz also seeks a permanent injunction prohibiting Defendants from making telemarketing solicitations to residential and wireless telephone numbers listed on the Federal Government's National Do Not Call Registry.

**<u>Third Cause of Action</u>:**
**Violations of The Texas Business and Commerce Code § 305.053**
**(<u>On Behalf of Plaintiff and the Texas Subclass</u>)**
**(Against All Defendants)**

116. Mr. Salaiz realleges paragraphs one through one hundred and fifteen and incorporates them herein as if set forth here in full.

117. The Texas Business and Commerce code has an analogous portion that is related to the TCPA and was violated in this case.

118. The foregoing acts and omissions of Defendants telemarketer and/or its agents constitute multiple violations of the Texas Business and Commerce Code § 305.053, by making non-emergency telemarketing calls to Mr. Salaiz's cellular telephone number without his prior express written consent in violation of 47 U.S.C. § 227 *et seq*. The Defendants violated 47 U.S.C. § 227(d) and 47 U.S.C. § 227(d)(3) and 47 U.S.C. § 227(e) by using an artificial or prerecorded voice message that does not comply with the technical and procedural standards under this subsection.

119.  Mr. Salaiz seeks for himself an award of at least $500.00 in damages for each such violation. Texas Business and Commerce Code § 305.053(b).

120.  Mr. Salaiz seeks for himself an award of up to $1,500.00 in damages for each such knowing or willful violation. Texas Business and Commerce Code § 305.053(c).


**Fourth Cause of Action:**
**Violations of The Texas Business and Commerce Code § 302.101**
**Failure to obtain a Telephone Solicitation Registration Certificate**
**(On behalf of Plaintiff and the Texas Subclass)**
**(Against All Defendants)**

121.  Mr. Salaiz realleges paragraphs one through one hundred and twenty and incorporates them herein as if set forth here in full.

122.  Defendants' illegal solicitation sales calls to Mr. Salaiz and the putative classes without having a valid telephone solicitation as required under Tex. Bus. Com. Code 302.101.

123.  Upon information and belief the actions of the Defendants also violated Texas Business and Commerce Code § 302.101 by placing solicitation phone calls through Jane/John Doe to a Texas resident without having a registration certificate and bond on file with the Texas Secretary of State.

124.  A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such.

125.  Upon information and belief, Mr. Salaiz sent a notice of violation and request for remedy under Texas Business and Commercial Code § 17.505(a).

126.  As a result of the Defendants' violations of Texas Business and Commerce Code § 302.101, Mr. Salaiz may and does seek damages of up to $5,000.00 for each violation. Texas Business and Commerce Code § 302.302(a).

127.  As a result of the Defendants violations of §302.101, Mr. Salaiz seeks all reasonable costs of prosecuting this action, including court costs, deposition costs, and witness fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Erik Salaiz, individually and on behalf of the Class prays for the following relief:

A.  An order certifying the Class as defined above, appointing Plaintiff as the Class representative and appointing his counsel as Class Counsel;

B.  An order declaring that the Defendants actions, as set out above, violate 227(b) of the TCPA;

C.  An order declaring that the Defendants actions, as set out above, violate 227(c) of the TCPA;

D.  An order declaring that the Defendants actions, as set out above, violate the TCPA willfully and knowingly;

E.  An award of $1,500.00 per call (10) in statutory damages arising from the TCPA §227(b) for each intentional violation;

F.  An award of $1,500.00 per call (10) in statutory damages arising from the TCPA §227(c) for each intentional violation;

G.  An award of $1,500.00 per call (10) in statutory damages arising from each violation of the Texas Business and Commerce Code § 305.053;

H.  An award of $5,000.00 per call (10) in statutory damages arising from each violation of the Texas Business and Commerce Code § 302.101;

I.   An injunction requiring Defendants to cease sending all unlawful calls;

J.   An award of reasonable attorneys' fees and costs; and

K.   Such further relief as the Court deems necessary, just, and proper.

### JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated this 23rd day of October 2024.

Respectfully Submitted,

The Darwich Law Firm, LLC
\_/Omar F. Darwich/ _____
Omar F. Darwich
Tx Bar No. 24124686

10921 Pellicano Dr, #100
El Paso, TX 79935

(915) 671-2221
omar@darwichlegal.com

**ATTORNEY FOR PLAINTIFF**

### VERIFICATION STATEMENT

I, Erik Salaiz, hereby state under oath that I am the Plaintiff in this dispute, that I have read the foregoing complaint, and that it is true and accurate to the best of my knowledge and belief, except as to matters stated on information and belief, and that as to those matters I believe to be true.

I declare under penalty of perjury that the foregoing verification is true and correct to the best of my knowledge and belief, and as to any matter stated on belief, I belief such to be true.

Dated this 23rd of October 2024

/s/ Erik Salaiz/
Erik Salaiz